IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA | * | |
| --- | --- | --- |
| | * | |
| | * | Case No. 17-po-7135 |
| v. | * | |
| | * | |
| | * | |
| WILLIAM K. ALLEN, | * | |
| | * | |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OPINION AND ORDER OF COURT

This matter is before the Court on Defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29 of his remaining charges in this case of driving while under the influence of drugs, in violation of 36 C.F.R. § 4.23(a)(1); unsafe operation of a motor vehicle, in violation of 36 C.F.R. § 4.22(b)(1); and failing to display a front license tag, in violation of Md. Code Ann., Transp. § 13-411, as incorporated under 36 C.F.R. § 4.2. Defendant contends that the Court should enter a judgment of acquittal under Fed. R. Crim. P. 29 or dismiss for lack of jurisdiction under Fed. R. Crim. P. 12(b)(2) because the Government has failed to prove the existence of federal jurisdiction in this case.

## BACKGROUND

The Court reviews the facts relevant to the present motions. During the trial testimony of United States Park Police ("USPP") Officer Easter, the arresting officer in this case, the Court allowed over Defendant's objection the Government's introduction of evidence of a portion of a recording of a 911 call made to the USPP on August 8, 2017, that was played at trial (Gov't Ex. 2). The audio recording of the 911 call contains the caller's observations to the dispatcher while

the caller was traveling on the Baltimore-Washington Parkway (the "Parkway") and following an erratically driven white Mercedes Benz. The caller advised the USPP dispatcher that the white Mercedes Benz was traveling northbound on the Parkway past the I-95/I-495 exit, swerving onto the grass and driving "all over the place" while approaching NASA Goddard. The caller advised the dispatcher that the vehicle ran another vehicle off the side of the road and that it had been stopping in the middle of the road. The caller also provided the Maryland registration number of the Mercedes Benz.

During the 911 caller's communication with the dispatcher, USPP communications advised officers to be on the lookout for a white Mercedes Benz traveling recklessly and erratically on the Parkway. At the time, Officer Easter was conducting a traffic stop off the Parkway on Soil Conservation Road. After receiving the notice, Officer Easter entered the Parkway, after which the USPP dispatcher advised the officer that the vehicle had left the Parkway and was traveling on Route 197, followed by the complaining 911 caller's vehicle.

While on Route 197, Officer Easter observed a white Mercedes Benz traveling more slowly than the flow of traffic and failing to maintain its lane. The officer also observed a vehicle with activated hazard lights that matched the description of the complaining 911 caller's vehicle following the Mercedes Benz. On the basis of these observations, Officer Easter, with his emergency lights activated, pulled in behind the white Mercedes Benz to initiate a traffic stop. At that point, the white Mercedes Benz made a hard right turn into the curb. After the white Mercedes Benz stopped, Officer Easter approached it and found Defendant to be the driver. Upon exiting the vehicle at the officer's direction, Defendant appeared disoriented. After conducting field sobriety tests on Defendant, Officer Easter arrested him for, among other offenses, driving under the influence of alcohol or drugs, in violation of 36 C.F.R. § 4.23(a)(1).

Defendant's vehicle, which had only one affixed Maryland registration tag, was searched and ultimately impounded. Because alcohol intoxication was not suspected, Defendant was transported to Prince George's Hospital for a blood draw rather than a breath sample, to which he consented.

Officer Easter at trial identified one of the speakers on the 911 recording as a USPP communications dispatcher. Officer Easter further testified that the USPP dispatch unit is located in Anacostia, Washington, DC. When a 911 call is forwarded to USPP, a live recording is made at the time of the call on the recorded line in Anacostia. USPP officers can obtain recordings of such 911 calls upon request to their on-duty supervisor. Officer Easter never spoke to the complaining 911 caller, however. The officer further testified that during 911 calls one USPP dispatcher is in contact with the caller while another dispatcher relays the information to the police on the radio. Defendant seeks to exclude the recording of the 911 call, contending that the Government failed to lay a foundation for the admission of the recording and failed to establish a hearsay exception that would permit the statements contained in it to be admitted for their truth. Defendant also seeks a judgment of acquittal or dismissal of this case because of a lack of federal jurisdiction.

## DISCUSSION

A.   **Admissibility of 911 Call Recording**

As an initial matter, the Court notes that the statements by the complaining 911 caller fall under the present-sense-impression exception to the hearsay rule under Fed. R. Evid. 803(1). *See, e.g.*, *United States v. Dean*, 823 F.3d 422, 427-28 (8th Cir. 2016) (per curiam). "The reason present sense impressions are considered inherently reliable is because statements contemporaneously describing an event are unlikely to reflect memory loss or provide an

3

opportunity to lie." *United States v. Orm Hieng*, 679 F.3d 1131, 1147 (9th Cir. 2012) (Berzon, J., concurring). Moreover, the 911 recording does not constitute inadmissible hearsay under the Sixth Amendment's Confrontation Clause. *See United States v. Laudermilt*, 576 F. App'x 177, 180 (4th Cir. 2014); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006).

Defendant argues that the Court should not have admitted a portion of the recording of the 911 call at trial because it was not properly authenticated. Defendant contends that the recording is inadmissible because Officer Easter had not spoken with the 911 call dispatcher whose voice was on the recording, did not work out of the same location as the dispatcher, did not know how the Government had obtained the recording, had not listened to the recording before trial, and did not know if the portion of the call played by the Government was complete. Defendant also maintains that the Government did not lay a foundation for the admission of the recording because neither the dispatcher nor the 911 caller appeared to authenticate their voices, no custodian of records testified about the process of making 911 call recordings, and no one certified that the recording was accurate and complete.

The Court notes that "[t]he proponent of an audio recording must show that the recording was sufficiently authentic to be admitted into evidence." *United States v. Wilson*, 115 F.3d 1185, 1188–89 (4th Cir. 1997) (citing *United States v. Branch*, 970 F.2d 1368, 1371 (4th Cir. 1992)). The requirement of authentication is satisfied when there is "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). All that is required under Fourth Circuit precedent for the admissibility of recorded conversations is "some proof that the audio recording accurately reflects the conversation in question." *United States v. Spence*, 566 F. App'x 240, 243 (4th Cir. 2014) (per curiam) (citing *United States v. Clark*, 986 F.2d 65, 68 (4th Cir. 1993); *United States v. Branch*, 970 F.2d 1368, 1371-72 (4th Cir. 1992)).

> Illustrative examples of such evidence include (1) testimony by a knowledgeable witness that "[the audio recording] is what it is claimed to be," Fed. R. Evid. 901(b)(1); (2) "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker," *id.* at (b)(5); or (3) testimony "describing a process or system and showing that it produces an accurate result," *id.* at (b)(9).

*Id.* (alterations in original). District courts are afforded "wide latitude in determining if a proponent of tape recordings had laid an adequate foundation from which the jury reasonably could have concluded that the recordings were authentic and, therefore, properly admitted." *Branch*, 970 F.2d at 1372.

Here, although Officer Easter testified that he had not heard the audio recording before it was played in court, he recognized the voice of the USPP dispatcher on the recording. "Any person may identify a speaker's voice if he has heard the voice at any time." *United States v. Cerone*, 830 F.2d 938, 949 (8th Cir. 1987). "All that is required is that the witness have the requisite familiarity with the speaker's voice." *United States v. Robinson*, 707 F.2d 811, 814 (4th Cir. 1983).

> Although the preferred practice is for the government to produce evidence regarding the competence of the tape machine operator, fidelity of the equipment, the absence of alterations to the tape and the identity of the speakers, the trial court has broad discretion to allow tapes into evidence without such a showing so long as there is independent evidence of accuracy.

*United States v. Reed*, 887 F.2d 1398, 1405 (11th Cir. 1989).[1] "[S]o long as there is a basis for the [factfinder] to resolve the authenticity question in favor of the party offering a tape recording, arguments on the reliability of identification go to the weight of the evidence, not its admissibility." *United States v. Capers*, 61 F.3d 1100, 1106 (4th Cir. 1995). The Court thus

---

[1] Officer Easter's personal observations of Defendant's vehicle as it was being followed by the 911 caller, its Maryland registration number, and the erratic manner in which the vehicle was being driven that were consistent with the 911 caller's reporting further provide independent evidence of the recording's accuracy.

5

finds that Officer Easter's testimony was sufficient evidence to authenticate the 911 call recording. *See* Fed. R. Evid. 901(b)(5).

**B.     USPP Extraterratorial Arrest**

Defendant also contends that he should be acquitted under Fed. R. Crim. P. 29 or that this case should be dismissed under Fed. R. Crim. P. 12(b)(2) for lack of jurisdiction because Officer Easter arrested him outside the Parkway on Route 197. Under 54 U.S.C. § 102701(a)(2)(D), USPP officers may "conduct investigations of offenses against the United States committed in the [National Park] System in the absence of investigation of the offenses by any other Federal law enforcement agency having investigative jurisdiction over the offense committed or with the concurrence of the other agency." There is thus no geographical limit on the ability of USPP officers to conduct investigations of offenses against the United States committed in the National Park System. *See United States v. Smith*, 713 F.2d 491, 494 (9th Cir. 1983). USPP officers may make warrantless arrests, however, only "within the System" or if the arrestee "is fleeing from the System to avoid arrest." 54 U.S.C. § 102701(a)(2)(B); *see United States v. Ryan*, 731 F.3d 66, 68 (1st Cir. 2013).

"Because an ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments, such action must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." *United States v. Hassan El*, 5 F.3d 726, 729 (4th Cir. 1993) (citation omitted). Accordingly, when an officer observes even a minor traffic offense, a stop of the vehicle is constitutionally permissible. *Id.* at 730. Under *Terry v. Ohio*, 392 U.S. 1 (1968),

> an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. To conduct a *Terry* stop, there must be at least a minimal level of objective justification for making the stop. Reasonable suspicion

requires more than a hunch but less than probable cause and may be based on the collective knowledge of officers involved in an investigation. In evaluating police conduct in a *Terry* stop, courts must consider the totality of the circumstances, including all information available to an officer and any reasonable inferences to be drawn at the time of the decision to stop a suspect. Reasonable suspicion may be supported by second-hand information, such as a tip, provided the tip possesses sufficient indicia of reliability.

*United States v. Davis*, 129 F. App'x 35, 36 (4th Cir. 2005) (per curiam) (citations omitted). "Where the informant is known or where the informant relays information to an officer face-to-face, an officer can judge the credibility of the tipster firsthand and thus confirm whether the tip is sufficiently reliable to support reasonable suspicion." *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004).

Here, the Court finds that the tip from the 911 caller as it was relayed to Officer Easter by USPP dispatch was sufficiently reliable to support the officer's reasonable suspicion that Defendant had been driving while impaired on the Parkway**.** The complaining caller was behind Defendant's vehicle as they were traveling on the Parkway while the caller was contemporaneously communicating with the USPP dispatcher and describing Defendant's erratic driving. Officer Easter's observation of Defendant's vehicle while it traveled on Route 197 further corroborated the 911 caller's tip. Under the totality of the circumstances the indicia of reliability surrounding the 911 caller's tip provided Officer Easter with reasonable suspicion that the driver of the white Mercedes Benz was impaired while on the Parkway. *See Navarette v. California*, 134 S. Ct. 1683, 1688-90 (2014) (finding that indicia of reliability associated with 911 call provided officer with reasonable suspicion to stop suspect's vehicle). On the basis of Officer Easter's reasonable suspicion, he had the statutory authority to investigate and perform a traffic stop outside the Parkway under 54 U.S.C. § 102701(a)(2)(D). *See United States v. Jones*, 428 F. Supp. 2d 497, 504 n.5 (W.D. Va. 2006).

Furthermore, although Officer Easter lacked the statutory authority under 54 U.S.C. § 102701(a)(2)(B) to arrest Defendant outside the Parkway because Defendant was not fleeing from the officer, "an extraterritorial arrest is not a *per se* violation of the Fourth Amendment." *Ryan*, 731 F.3d at 70. "[F]or an officer to arrest an obviously intoxicated driver just outside that officer's territorial jurisdiction, after a lawful traffic stop, is 'not remotely' akin to the invasions of privacy that might call for the exclusion of evidence." *Id.* Rather, the Fourth Amendment protects against unreasonable searches and seizures. "When officers have probable cause to believe that a person has committed a crime in their presence, the Fourth Amendment permits them to make an arrest, and to search the suspect in order to safeguard evidence and ensure their own safety." *Virginia v. Moore*, 553 U.S. 164, 178 (2008). "So long as the arrest is based on probable cause, it is constitutionally permissible and the Fourth Amendment does not require exclusion of the evidence recovered from the arrest or the search incident to that arrest." *United States v. Strasnick*, Criminal Action No. 08-PO-224 JLA, 2008 WL 2389789, at *3 (D. Mass. June 10, 2008). "The issue of reasonableness, thus, does not turn on the legality of the arrest." *Id.* (citing *Jones*, 428 F. Supp. 2d at 503). "The underlying command of the Fourth Amendment is reasonableness, and the fact that an arrest may have violated a territorial-limitation statute, whether it be state or federal, is merely a factor to be considered when deciding whether this constitutional mandate has been followed." *Jones*, 428 F. Supp. 2d at 503.

Here, while on Route 197, Officer Easter observed that Defendant's vehicle was traveling more slowly than the flow of traffic and was failing to maintain its lane. Although following Defendant on Route 197 may not have furnished Officer Easter with the probable cause to believe that Defendant had committed traffic offenses on the Parkway, once the officer pulled over Defendant, the results of the field sobriety tests and Defendant's demeanor provided the

officer with probable cause for the DUI and unsafe operation offenses. *See Strasnick*, 2008 WL 2389789, at *4. "Ultimately, the motivation for pulling [Defendant] over does not compromise the reasonableness of the stop. So long as there is probable cause to believe that a criminal offense has been or is being committed, a warrantless arrest is reasonable under the Fourth Amendment." *Id.* (footnote omitted). Moreover, an extraterritorial investigation does not exceed the investigative scope under § 102701(a)(2)(D) where the probable cause was gathered outside the Parkway. *See id.*; *see also United States v. Guillie*, No. CR.A. 02-288, 2002 WL 31640489, at *3, *5 (E.D. La. Nov. 15, 2002) (park rangers may conduct investigations outside of park system boundaries where the offense being investigated was committed within the park, and when the extraterritorial stop leads to probable cause for a different offense, it is sufficient that "the unlawful conduct that triggered the chain of events occurred in the park").

Thus, Officer Easter was authorized to stop Defendant outside the Parkway for the purpose of conducting an investigation into Defendant's initial traffic violation on the Parkway. *See* 54 U.S.C. § 102701(a)(2)(D); *see also Whren v. United States*, 517 U.S. 806, 810 (1996). The events leading up to and following the stop established probable cause to believe that Defendant had committed traffic offenses on the Parkway. *See Strasnick*, 2008 WL 2389789, at *4. In short, probable cause sufficient to fulfill the reasonableness safeguard of the Fourth Amendment has been shown. Defendant's motion for judgment of acquittal under Fed. R. Crim. P. 29 or, in the alternative, for dismissal for lack of jurisdiction under Fed. R. Crim. P. 12(b)(2) on the basis of Officer Easter's extraterritorial arrest of Defendant thus is **DENIED**.

Date: February 23, 2018                                   /s/
                                                    Thomas M. DiGirolamo
                                                    United States Magistrate Judge